IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. FISHER,<br>    Plaintiff,<br><br>  v.<br><br>MEGAN L. KING, ESQ., Individually and in her Official Capacity as Assistant District Attorney for Lancaster County, Pennsylvania, and ERIC ZIMMERMAN, Individually and in his Official Capacity as Detective for Northern Lancaster County Pennsylvania Regional Police Department,<br><br>    Defendants. | CIVIL ACTION<br>NO. 15-6134 |

**MEMORANDUM OPINION**

**Schmehl, J.**   **/s/ JLS**                                                            **July 19, 2016**

Before the Court is the motion to dismiss of Defendant, Megan L. King, Esq., and the motion to dismiss of Defendant, Eric Zimmerman. Plaintiff, John R. Fisher (hereinafter "Plaintiff") has filed opposition to both motions. Having read the parties' briefing, I will deny the motion of Defendant King in its entirety and will deny the motion of Defendant Zimmerman as to all claims except the official capacity claim brought against Defendant Zimmerman, which I will grant with leave to amend.

**I.   STATEMENT OF FACTS**

Plaintiff was a tax and investment advisor to his father-in-law, Robert Hoover, and his mother-in-law, Dorothy Hoover, and served as their power of attorney starting in 2006. (Compl., ¶¶ 17-19.) In August of 2009, Mr. and Mrs. Hoover executed a letter of authority that was accepted by Genworth Financial Services, Inc., and transferred money to Plaintiff's wife (the Hoovers' daughter), Suzanne Fisher and her sister, Rebecca

Hoover Holderman. (Compl. at ¶ 25.) Mr. Hoover died on December 9, 2009, and Mrs. Hoover revoked the power of attorney that she had granted to Plaintiff. (Id. at ¶¶ 26-28.)

In May of 2012, Detective Eric Zimmerman of the Northern Lancaster Regional Police Department, contacted Plaintiff and informed him that he was investigating a complaint made to the Lancaster County Office on Aging and Protective Services against Plaintiff for fraudulently signing a power-of-attorney for Mrs. Hoover which effectuated a transfer of money from Mr. and Mrs. Hoover to Suzanne Fisher. (Id. at ¶¶ 32, 34.) Plaintiff was subsequently arrested and charged with theft of deception and false impression, criminal conspiracy and securing the execution of documents by deception. (Id. at ¶ 45.) Defendant Zimmerman worked with Assistant District Attorney Megan L. King during the investigation of the case against Plaintiff.

On February 20, 2015, the District Attorney of Lancaster County dismissed all charges against Plaintiff and Judge Joseph C. Madenspacher expunged all charges that had been brought against Plaintiff pursuant to an agreement that was entered into with Defendant King. (Id. at ¶¶ 58-59; Doc. 10, Ex. A.)

Plaintiff brings claims against both defendants for alleged violations of his Fourth Amendment rights in carrying out a "baseless prosecution without probable cause" and for abuse of process and malicious prosecution.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007.) A claim is facially plausible when the facts pleaded "allow[]

the court to draw the reasonable inference tha the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 678.) The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," id. at 210-11, and then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief,'" id. at 211 (quoting Iqbal, 556 U.S. at 679).

### III.   DISCUSSION

Defendant King and Defendant Zimmerman both move to dismiss the complaint in its entirety. For the reasons that follow, I will deny defendant King's motion and I will deny Defendant Zimmerman's motion, except as to the official capacity claim against Defendant Zimmerman, which I will grant and allow Plaintiff to amend.

#### A.  MOTION TO DISMISS OF DEFENDANT KING

Defendant King sets forth two arguments in support of her motion to dismiss. First, she claims that she is entitled to absolute immunity as a prosecutor, and second, she alleges that Plaintiff's claims are precluded under the Heck doctrine. As will be discussed below, I will deny Defendant King's motion to dismiss in its entirety.

##### 1.  Prosecutorial Immunity

Prosecutors are protected from liability by prosecutorial immunity, but in order to be entitled to absolute immunity from suit, a prosecutor must show that he or she was functioning as the state's advocate when performing the action in question. Yarris v. County of Delaware, 465 F.3d 129, 136 (3d Cir. 2006). "A prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008). However, absolute immunity does not apply

to administrative or investigative actions unrelated to initiating or conducting judicial proceedings. (Id.)

A review of the Complaint in this matter shows that Plaintiff alleges conduct by Defendant King that occurred during the investigation and administrative phase of the prosecution of Mr. Fisher. (Compl., ¶¶ 36-41.) Specifically, Plaintiff alleges that Defendant King possessed evidence during the investigative phase of the case against him that proved that Plaintiff never executed a Power of Attorney for Mrs. Hoover to transfer any funds, never communicated with Mr. Hoover about the transfer of any money, was not in Mr. Hoover's presence to discuss the transfer of money and did not receive any money from Mrs. Hoover. (Id., ¶¶ 36-37, 39.) Plaintiff's Complaint further alleges that despite being in possession of evidence that absolved Plaintiff, during the investigation of Plaintiff, Defendant King advised Zimmerman that there was probable cause to arrest and charge Plaintiff. (Id., ¶¶ 40-41.)

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, I find that giving Defendant King absolute prosecutorial immunity from this claim is not appropriate at this stage of the proceedings. Plaintiff has alleged sufficient facts that, if true, would indicate Defendant King was "not functioning as the state's advocate" in her dealings with the investigation of Plaintiff. Accordingly, Defendant King cannot establish that she is entitled to absolute prosecutorial immunity.

### 2. *Heck* Doctrine

In order to establish a *prima facie* case for a section 1983 malicious prosecution

claim, a plaintiff must establish the elements of the common law tort, which are 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007). Defendant King argues that Plaintiff in this matter did not fully contest the charges in the underlying criminal case and entered into a plea agreement, and therefore, the "favorable termination" rule established in Heck v. Humphrey, 512 U.S. 477 (1994), precludes his cause of action for malicious prosecution.

It is undisputed that in order to pursue a claim for malicious prosecution and avoid the application of the Heck doctrine, Plaintiff's criminal case must have concluded in a manner indicating his innocence. In short, the criminal case must have resulted in a "favorable termination" for Plaintiff. Heck, 512 U.S. 477. In this case, the charges brought against Plaintiff were dismissed pursuant to an agreement between the Commonwealth and Plaintiff, memorialized in a written agreement pursuant to Rule 586 of the Pennsylvania Rules of Civil Procedure. However, there is a dispute as to the effect this Rule 586 agreement had on Plaintiff. Defendant King argues that the agreement was entered into and charges were dismissed against Plaintiff in exchange for he and his wife returning over $568,000 to Mrs. Hoover, and therefore, the criminal action did not terminate favorably for Plaintiff. In response, Plaintiff argues that he did not repay any money to Mrs. Hoover pursuant to the Rule 586 agreement; rather, the money was entirely repaid by his wife, Suzanne Fisher. Plaintiff suggests that although his dismissal

5

in the underlying case was effectuated through a Rule 586 dismissal, at no time did he personally enter into a settlement agreement or compromise with the alleged victim, Mrs. Hoover. Rather, Plaintiff argues the settlement agreement or compromise was entered into between his wife and co-defendant, Suzanne Fisher, and Mrs. Hoover. A review of the Rule 586 Form signed by Plaintiff in this matter shows that Plaintiff made a handwritten note on said form indicating that "$568,697.43 paid solely by Suzanne Fisher." (See Docket No. 10, Ex. A.)

The Third Circuit has held that "in instances where a party authorizes [his] co-defendant to enter into a compromise agreement providing for the dismissal of [his] criminal charges and [he] offers no consideration in exchange for such dismissal, [he] will not have been found to have relinquished [his] right to file a malicious prosecution claim unless it is plain from the record of a hearing in open court or a written release-dismissal agreement that such relinquishment was knowing, intentional and voluntary." Hilfirty v. Shipman, 91 F.3d 573, 583-84 (3d Cir. 1996). In the instant matter, at the motion to dismiss stage of this proceeding, there is nothing to support the argument that Plaintiff knowingly, intentionally and voluntarily relinquished his right to file a malicious prosecution claim when his wife and co-defendant agreed to repay the money in question to her mother in exchange for the charges being dismissed. Accordingly, Defendant King's motion is denied, and Plaintiff's malicious prosecution claim will be allowed to proceed.

### B.  MOTION TO DISMISS OF DEFENDANT ZIMMERMAN

Defendant Zimmerman argues in his motion that he is entitled to qualified immunity, that Plaintiff cannot show that he suffered a "seizure" as contemplated by the

Fourth Amendment, that he cannot be held liable for malicious prosecution because there is no allegation that he materially misled the prosecutor and that Plaintiff's claim against Defendant Zimmerman in his official capacity should be dismissed as it is really an improperly pled claim against the police department. As discussed below, Defendant Zimmerman's motion will be denied, except for the official capacity claim, which will be granted with leave for Plaintiff to amend.

### 1. Fourth Amendment Seizure

Defendant Zimmerman argues that Plaintiff does not allege any Fourth Amendment "seizure" and that Plaintiff's arrest, without more, cannot support a malicious prosecution claim. However, I find that Plaintiff's Complaint adequately pleads an arrest and seizure so as to support a Fourth Amendment claim.

It is true that an arrest alone cannot support a malicious prosecution claim; rather, there must be some post-indictment deprivation of liberty as a result of the arrest and prosecution. Wirtz v. Middlesex Cnty Office of the Prosecutor, 249 F.Appx. 944, 949 (3d Cir. 2007). However, when a police officer's words and actions convey to a reasonable person that he is "being ordered to restrict his movement," courts have found that police have made a "show of authority" which may result in a seizure under the Fourth Amendment. California v. Hodari D., 499 U.S. 621, 629 (1991).

A review of Plaintiff's Complaint shows that he has adequately pled that he was arrested and seized in this matter. The Complaint shows that Plaintiff, after learning of the issuance of an arrest warrant for him, made arrangements to turn himself in to the Northern Lancaster County Police Department. (Compl, ¶ 42-43.) Plaintiff was then booked, fingerprinted and photographed by Defendant Zimmerman, and appeared before

a magisterial district judge for a bail hearing and arraignment. (Compl., ¶ 43.) Clearly, Plaintiff's movements were restricted by Defendant Zimmerman's "show of authority" once Plaintiff presented himself to the police station. Accordingly, Plaintiff has pled sufficient grounds to allow his Fourth Amendment claim against Defendant Zimmerman to proceed.

### 2. Malicious prosecution

Defendant Zimmerman also argues that he cannot be held liable for malicious prosecution in this matter because Plaintiff has failed to allege that he materially misled the prosecutor into prosecuting Plaintiff. Malicious prosecution claims require a plaintiff to prove that 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was initiated without probable cause; and 4) the defendants acted maliciously or for a purpose other than bringing plaintiff to justice. Hilfirty v. Shipman, 91 F.3d at579. Defendant Zimmerman argues that there is no allegation that he materially misled the prosecutor and therefore, he did not initiate the prosecution of Plaintiff and cannot be held liable for malicious prosecution. However, a defendant may be held liable for malicious prosecution if one "fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or otherwise interfere[s] with the prosecutor's ability to exercise independent judgment." Torres v. McLaughlin, 966 F.Supp. 1353, 1365 (E.D. Pa. June 5, 2997), *rev'd on other grounds*, Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998).

A review of the Complaint in this matter shows that Plaintiff has pled with sufficient specificity that Defendant Zimmerman knew, prior to arresting Plaintiff, that

8

Plaintiff never executed a signature as Power of Attorney for Mr. or Mrs. Hoover, never secured a signature for Mr. Hoover on any document and was not present with Mr. Hoover at any time to communicate with him in an effort to secure his signature on a document. (Compl., ¶¶ 36-40.) Further, Plaintiff alleges in his Complaint that Defendant Zimmerman fabricated an affidavit when he attested under oath that Plaintiff admitted to a crime, which Zimmerman knew was not true, and that Zimmerman possessed evidence that proved that no money was ever transferred to Plaintiff. (Compl. ¶¶ 36-40.) Plaintiff has set forth sufficient allegations that Zimmerman made false and/or misleading reports to the prosecutor and failed to disclose exculpatory evidence to the prosecutor. Therefore, Plaintiff has sufficiently pled a malicious prosecution claim, and Defendant Zimmerman's motion to dismiss the malicious prosecution claim is denied.

### 3. Qualified Immunity

Defendant Zimmerman alleges that he is protected by qualified immunity in this matter. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). However, Defendant cannot establish that he is protected by qualified immunity in the instant case, because Plaintiff's Complaint has alleged that Zimmerman arrested and prosecuted Plaintiff when Zimmerman knew or should have known that there was no probable cause to arrest him. As arresting and prosecuting someone without probable cause is clearly a violation of the Fourth Amendment and constitutes a valid

claim at this phase of the proceedings, Defendant's motion to dismiss on the basis of qualified immunity is denied.[1]

## IV. **CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss are denied, with the exception of Defendant Zimmerman's motion to dismiss the official capacity claim against him. That motion is granted, and Plaintiff is given twenty (20) days to file an Amended Complaint properly setting forth an official capacity claim against Defendant Zimmerman, if he so desires.

---

[1] Defendant Zimmerman also argues that by suing him in his official capacity, Plaintiff is really suing the Northern Lancaster Regional Police Department, and this claim must fail because it is not properly pled in violation of Monell v. Dep't of Soc. Servs, 436 U.S. 658 (1978). The Supreme Court has clearly established that official capacity suits, *i.e.,* suits against municipal officials in their official capacity, should be treated as suits against the municipality. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)). Moreover, "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." " Id. (quoting Graham, 473 U.S. at 166 (quoting Monell, 436 U.S. at 694)). Plaintiff has failed to plead any "policy or custom" of the police department that played a part in the alleged constitutional violations. Thus, I will dismiss the § 1983 claims against Defendant Zimmerman in his official capacity only with leave to amend, if Plaintiff wishes to pursue such a claim against Defendant Zimmerman.